UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NARESSA COFIELD**<br><br>v.<br><br>**KIPP NEW ORLEANS, INC.,**<br>**RHONDA KALIFEY-ALUISE, in her**<br>**individual and official capacity, and**<br>**OCTAVE LAROCHE, in his individual**<br>**and official capacity** | **CIVIL ACTION**<br><br>**NO. 2:21-cv-02223**<br><br>**JUDGE LANCE M. AFRICK**<br><br>**MAG. JUDGE DANA M. DOUGLAS** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO STAY PROCEEDINGS**

**MAY IT PLEASE THE COURT:**

This Honorable Court should reject Plaintiff's Motion to Stay the above caption below action "pending final adjudication" of an administrative proceeding "before the National Labor Relations Board ("NLRB")" for reasons set forth below. More specifically:

1. Based on a reasonable and conservative estimate, the proposed stay would last 1½ - 2 years. Defendants oppose such an unreasonable request, since trial is set in October.

2. That Plaintiff's allegations are inconsistent[1] as the pendency of this lawsuit and the NLRB proceeding do not create a substantial risk of inconsistent judgments due to different legal issues.

3. Entry of a stay would result in waste, not a conservation of resources. [2]

**I.    RELEVANT, LIMITED BACKGROUND OF KIPP AND KIPP NEW ORLEANS SCHOOLS INC.**

The Knowledge is Power Program ("KIPP"), is the largest, national network of tuition-

---

[1] Dr. Cofield represents she is not a supervisor to the NLRB but compares herself herein to other supervisors/directors.
[2] Both tribunals will hear the background of the decision to terminate her services. Both tribunals will decide if Dr. Cofield is entitled to back pay, though she cannot recover twice. Only this Court can award her mental anguish and punitive damages, if the evidence so warrants.

1

free, public charter schools in low-income communities. KIPP has 200 schools and nearly 10,000 students. The KIPP Foundation, its schools and regions are committed to supporting racial justice and equitable opportunity for their students, families, and staff.

KIPP New Orleans, Inc. ("KIPP N.O."), was formed in 2005. Today, KIPP N.O. has more than 5,000 students in grades Pre-K through 12 at thirteen schools across the city: Booker T. Washington High School, Frederick A. Douglass High School, John F. Kennedy High School, KIPP Believe College Prep, KIPP Believe Primary, KIPP Central City Academy, KIPP Central City Primary, KIPP East Primary, KIPP East Academy, KIPP Leadership Academy, KIPP Leadership Primary, KIPP Morial Middle, and KIPP Morial Primary.

About 90% of KIPP N.O. employees work at one of its schools. The remaining 60 employees who perform the "core functions" of KIPP N.O. and its schools (i.e., Finance, Human Resources, School Operations, Data, Technology, Special Education Support, External Affairs, Recruiting, Talent, and Communications) are employed in the KIPP N.O. regional office (often referred to as the "School Support Center" or "SSC"). As is relevant to this lawsuit, Plaintiff, who was then serving as the Director of Talent Strategy, Naressa Cofield, was part of the SSC.

About 52% of KIPP N.O.'s workforce are Black, 62% are females, and of these, only 24% are white.

## II. KIPP N.O. HIRED PLAINTIFF AS A FOURTH GRADE HUMANITIES TEACHER AND PROMOTED HER TO DIRECTOR OF TALENT STRATEGY.

KIPP N.O. hired Dr. Cofield, a Black female, on July 1, 2017 as a Fourth Grade Humanities Resident Teacher at KIPP Leadership Primary ("KLP"). This role was part of Dr. Cofield's two-year plan to earn a Master's in Special Education. In July of 2018, Dr. Cofield received her teacher certification in elementary education. The following year, Dr. Cofield completed her two-year residency and received her Master's in Special Education.

2

On May 16, 2019, Dr. Cofield informed KLP's principal, Jenni Seckel, to whom she had been reporting, that she would not be returning as a KLP teacher.

In July 2019, and based on the decision/effort of Octave ("Joey") Laroche, a Black male, KIPP N.O. offered and Dr. Cofield accepted the Director of Talent Strategy position. Her starting salary was $75,000.00, a number she agreed to when she accepted the position.

As the Director of Talent Strategy, Dr. Cofield reported directly to LaRoche. The Talent Strategy Manager, Amani Khabeer (a Black female), reported directly to Dr. Cofield. Plaintiff, *inter alia*, was empowered to assign work, supervise, evaluate, and discipline Ms. Khabeer up to and including termination. Dr. Cofield had the unilateral authority to hire a replacement for Ms. Khabeer if she chose to leave. Dr. Cofield could also propose additional hires and, if approved, would have the authority to make those hires independently.

### III. KIPP N.O. TERMINATED COFIELD'S SERVICES ON DECEMBER 4, 2020.

Dr. Cofield asked LaRoche for a pay raise in less than a year on the job. LaRoche responded telling her that he was not sure if any employees would receive a raise in 2020, including the customary 2% cost of living raises, due to the pandemic.

On June 17, 2020, Rhonda Kalifey-Aluise, a white female and KIPP N.O.'s CEO, emailed all SSC employees, including Dr. Cofield, notifying them that: 1) no employees would need to be laid off; and 2) they would receive the customary 2% cost of living raise that year, despite financial hardship caused by the pandemic. She also instructed employees to refrain from requesting additional compensation or raises: "…[p]lease note that we are incredibly fortunate to move forward with this during the current financial climate; please also note that due to these very tight financial restrictions we will not be able to have conversations about increases above 2%."

On July 1, 2020, Dr. Cofield received the annual 2% cost of living raise increasing her base yearly salary to $76,500.[3] The next week, Dr. Cofield was offered a $15,000 diversity and inclusion stipend; this was the largest stipend KIPP N.O. offered during the 2019-2020 academic school year. Dr. Cofield declined.

Despite Kalifey-Aluise's email and her refusal to accept a DEI initiative stipend, Dr. Cofield again sought to discuss her compensation with LaRoche on July 16, 2020.[4] Thereafter, on or about December 2, 2020, Dr. Cofield met with LaRoche and once again sought increased compensation for herself. During that conversation, Dr. Cofield started naming salaries of other employees who make more than her.

That afternoon, Bridget Burns (a Black female), who also directly reports to LaRoche, called him to say that Dr. Cofield called her and other colleagues, sharing confidential salary information. She said the communication made her feel uncomfortable. Ms. Burns forwarded screen shots of text messages reflecting the same.

LaRoche immediately shared this with Todd Purvis, Chief Academic Officer, and sent him screenshots of the messages. Others told Purvis the communications from Dr. Cofield made them feel uncomfortable.

On Friday, December 4, 2020, LaRoche and Dylan Penny head of HR and a Black male, informed Dr. Cofield that her services were terminated, effective immediately. This was the second time Dr. Cofield had improperly used salary information for personal gain, having been reprimanded previously for doing so.

---

[3] Cofield also received benefits such as Group health insurance, a 401K, and generous vacation.
[4] *See* footnote 3.

## IV.   COFIELD EXHAUSTED HER ADMINISTRATIVE REMEDIES AND PROCEDURAL POSTURE OF THIS LAWSUIT AND NLRB

### A.   EEOC Charge and this Lawsuit

Dr. Cofield filed a lengthy amended charge with the Equal Employment Opportunity Commission ("EEOC") and responded to KIPP N.O.'s position statement. The EEOC never made a determination as to whether there was discrimination, because Dr. Cofield requested a right to sue letter. This lawsuit followed.

### B.  NLRB

Dr. Cofield also filed an unfair labor practice charge with the NLRB on December 3, 2021. After many months, the Regional Director advised the parties that a complaint would be issued absent settlement. A settlement was not reached. Then, the local Regional Director filed an unfair labor practice Complaint on February 11, 2022.

The Regional Director advised the parties the matter would go to trial on May 16th unless the parties were not available. Today, the parties learned that the NLRB hearing will be rescheduled for July 13-15, 2022.

### C.  Procedural Posture of This Lawsuit

With respect to this lawsuit, this Court held a preliminary conference on March 15, 2022. At that time, this Court issued an order setting trial for October 11, 2022.

On March 10, 2022, the parties agreed that Defendants would conduct the deposition of Dr. Cofield on April 27, 2022. Dr. Cofield has requested the depositions of the individual defendants, as well as the corporate deposition of KIPP N.O., and a number of other individuals.

Notwithstanding a status conference set for April 26, 2022, on April 6, 2022, Plaintiff filed and set her Motion to Stay for May 4, 2022. Dr. Cofield seeks to stay the proceedings herein until a final judgment has been rendered on the NLRB unfair labor practice complaint.

5

## V. THIS COURT SHOULD REJECT PLAINTIFF'S MOTION TO STAY.

### A. There is No Basis for the Requested Stay And The Proposed Stay Is Unreasonably Long.

Dr. Cofield's motion seeks stay pending final judgment of her NLRB proceeding. But, fails to mention, even in conclusory terms, the estimated length of the stay sought. She does so, even though the one case she cited in support of the stay requires doing so.

More specifically, the court in *Re Davis,* 730 F.2d 176, 178-79 (5th Cir. 1984), stated:

> The party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding, must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else.
>
> \* \* \*
>
> The court must also carefully consider the time reasonably expected for resolution of the other case, for stay orders will be reversed when they are found to immoderate or of an indefinite duration…Thus, a stay must be so framed in the inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.

Plaintiff's proposed delay would span 1½ - 2 years. *See,* 29 C.F.R.§102.34 *et seq.* More specifically, before entry of a *final* judgment:

- An unfair labor practice trial must be held before an Administrative Law Judge ("ALJ") on the merits.

- Trial before an ALJ must be held on damages if Cofield prevails. This Trial is set for July 2022.

- Then either Cofield or KIPP N.O. could appeal to the NLRB.

- Either party could next appeal the NLRB's decision to the Fifth Circuit Court of Appeals.[5]

---

[5] *See* 29 U.S.C. § 160(e) and (f). *See also DirecTV Holdings, L.L.C. v. Nat'l Labor Relations Bd.*, 650 Fed.Appx. 846 (5th Cir.2016)(stating that the Fifth Circuit Court of Appeals has "jurisdiction to review or enforce the NLRB's order pursuant to 29 U.S.C. § 160(e) and (f).")

Then, this matter would have to get back on this Court's trial docket. The Defendants oppose this Motion because the proposed stay is unreasonably long.

### B. The Risk of Inconsistent Judgments is All but Non-existent.

#### 1. This Lawsuit and the NLRB Proceeding Involve Different Law

Dr. Cofield's Memorandum in Support of Motion to Stay at p. 4 contains the following:

> Simultaneous proceedings before this Court and the NLRB in the instant matter raise a substantial risk of inconsistent rulings. This risk arises from the similarities in claims between the suit proceeding before this Court, and the NLRB suit. Similarities include whether Dr. Cofield advocated for herself and other Black women- <u>the difference between the two suits is in determining whether the same conduct was protected by the National Labor Relations Act or under federal and state discrimination and retaliation laws</u>. Other similarities include determining whether and what damages Dr. Cofield suffered as a result of her termination, and whether an award of lost wages, benefits and other economic losses is appropriate.

(emphasis added).

Plaintiff has initiated the process and actually brought suit under two different laws, as this Court can see. But, Dr. Cofield has not provided this Court with the material differences of the laws for purposes of this motion. This is important because the NLRA protects non-supervisor employees, whereas, Title VII protects all employees.[6] Congress defined "supervisor" in the National Labor Retaliation Act ("NLRA"). More specifically, 29 U.S.C. §152(11) defines a supervisor as:

> any person having authority in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if …such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Dr. Cofield does not provide this Court with the meaning of the term supervisor or cite to the United States Supreme Court decision that defined supervisor under federal and state anti-

---

[6] *See* 29 U.S.C. §152(3); 42.U.S.C. §2000e (f).

7

discrimination and retaliation laws.[7] In *Vance v. Ball State University*, the Court defined supervisor in the context of a Title VII case, holding that a supervisor refers to someone who has the power to hire, fire, demote, promote, transfer or discipline an employee (Plaintiff).[8]

Interestingly, at least for purposes of this matter, the *Vance* Court carefully discussed the differences between the term "supervisor" as defined or used by EEOC and the NLRB.[9] The *Vance* Court noted that while the definition of supervisor under the NLRA is broad, the Board narrowly construes it.[10] The Court proceeded to explain why stating "Congress wished to preserve the balance between labor and management" and excluded supervisors so that they could not become part of bargaining units and negotiate with the employer.[11]

Dr. Cofield compares herself with directors and supervisors at KIPP N.O. She believes she should have been paid as much as them. Yet, before the NLRB, she contends that she is not a supervisor at all.

**2. Conclusory allegations of inconsistent judgments do not a meritorious argument make.**

As one can see above, Dr. Cofield says "…the difference between the two suits is in determining whether the same conduct was protected by the National Labor Relations Act or under federal and state discrimination and retaliation laws." Defendants view the statement as a conclusory "misstatement."

The statement is conclusory because Dr. Cofield does not explain the significance of "inconsistent." That is, the consequences, if any, are not explained.

---

[7] *See Vance v. Ball State University*, 570 U.S. 421, 133 S.Ct. 2434, 2443 (2013).
[8] *Id.*
5 *Id.*
[9] *Id.* at 2445.
[10] *Id*.
[11] The *Vance* Court described this as "inapposite to the purpose to Title VII which focuses on eradicating discrimination." *Id.*

Defendants do not see this in "either/or" terms. Rather, there is a common issue in general between the proceedings before the NLRB and this Court. That issue is the existence or non-existence of a "discriminatory" discharge. But, the nature of the discrimination is very different.

Before the NLRB is whether KIPP N.O. was motivated in part to discriminate based on Dr. Cofield's exercise of her 29 U.S.C. §157 rights.[12] At issue herein is whether her termination was motivated in part by her race, sex, and/or intersectional discrimination.

Thus, if the NLRB administrative proceeding results in a finding that Dr. Cofield was a supervisor, KIPP N.O. will not be liable because supervisors are not employees under the NLRA. That scenario would have no effect on the issues herein. That is, Dr. Cofield would not lose any of her claims in this lawsuit, her conclusory allegation to the contrary notwithstanding.

Just to be clear, if a final judgment from the administrative proceedings results in a finding that Dr. Cofield was not a supervisor, i.e., she was an employee and that her services were terminated based in part on the exercise of her 29 U.S.C §157 rights, that would have no effect. That is, a jury will decide whether she was discharged because of her race, sex, and/or intersectional discrimination.

The opposite is also true. That is, if the case herein results in a judgment for or against Dr. Cofield or KIPP N.O., the decision would not preclude the NLRB proceeding.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000) provides more clarity on this distinction. According to the *Reeves* Court, when a plaintiff alleges

---

[12] "Employees have the right to form, join or assist labor organizations and to engage in other concerted activities … for the purpose of other mutual aid or protection…"

9

disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision".[13] The Court proceeded to explain:

> We must, as an essential final step, determine whether Reeves presented sufficient evidence that his age motivated [respondent's] employment decision…[14]
>
> \*   \*   \*
>
> We held in *St. Mary's Honor Center, Inc.* that the factfinder's rejection of the employer's legitimate non-discriminatory reason for its action does not *compel* judgment for the plaintiff. 509 U.S. at 511, 113 S.Ct. at 2742 (italics in original). The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive or even obviously contrived does not necessarily establish that plaintiff's proffered reason is correct. *Id*. at 524, 113 S.Ct. 2742. In other words, "[i]t is not enough to *dis*-believe the employer; the factfinder must *believe* that plaintiff's explanation of intentional discrimination. *Id*. at 519, 113 S.Ct. 2742."[15]

The *Reeves* Court finally added:

> > There will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was an abundant and uncontroverted independent evidence that no discrimination had occurred.[16]

KIPP N.O. submits that proof of no discrimination under Title VII would not affect the Board proceeding and vice versa.

### C. Granting the Motion to Stay Would Result in Waste, Not Conservation of Resources

Dr. Cofield's contention that a stay is necessary to conserve the resources of the parties is meritless. In fact, the opposite is true. The entry of a stay would result in the waste of resources because:

---

[13] *Reeves*, 530 U.S. at 141, 120 S.Ct. at 2105.
[14] *Id.*. at 2108.
[15] *Id.* (italics in original).
[16] *Id.* at 2019.

10

- Both Tribunals will hear the background of and the decision to terminate the services of Dr. Cofield.

- Both forums will decide if Dr. Cofield is entitled to backpay in the event she prevails.[17]

- If Plaintiff prevails, only this Court can award her mental anguish and punitive damages.

- If a jury concludes that Dr. Cofield's allegations lack merit, she can appeal.

- Defendants can also appeal from the Fifth Circuit, if a jury rules in favor of Dr. Cofield and this Court denies post-trial motions.

## IX. CONCLUSION.

Dr. Cofield made the decision to bring simultaneous actions in front of the Board and this Court. She may well want to use these proceedings to negotiate/receive more money.[18] But, KIPP N.O., Ms. Kalifey-Aluise, nor Mr. Laroche ask to be or deserve to have been sued. They want this matter dismissed as soon as possible so that they can devote all of their attention to furthering the KIPP mission.

For the foregoing reasons, the KIPP N.O. Defendants respectfully request that Plaintiff's Motion to Stay be denied.

*Signature on following page*

---

[17] Dr. Cofield can only recover backpay once.
[18] She does not mention the fact that she also filed a complaint with the Department of Education.

11

Respectfully submitted,

*/s/ Blair E. Boyd*
ELLIS B. MUROV (#09839)
emurov@deutschkerrigan.com
MELISSA M. LESSELL (#32710)
mlessell@deutschkerrigan.com
DENIA S. AIYEGBUSI (#31549)
denia@deutschkerrigan.com
CASEY B. WENDLING (#38676)
cwendling@deutschkerrigan.com
BLAIR E. BOYD (#39410)
bboyd@deutschkerrigan.com
**DEUTSCH KERRIGAN, LLP**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
*Attorneys for Defendants, KIPP New Orleans, Inc., Rhonda Kalifey-Aluise, and Octave "Joey" LaRoche*